**Daniel B. Katz & Assoc. Corp. v 569 Broad LLC**

2025 NY Slip Op 30140(U)

January 14, 2025

Supreme Court, New York County

Docket Number: Index No. 652479/2022

Judge: Arlene P. Bluth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**   **HON. ARLENE P. BLUTH**                     **PART**                         **14**

*Justice*

-------------------------------------------------------------------------------X

DANIEL B. KATZ & ASSOCIATES CORP.                    **INDEX NO.**        652479/2022

                                    Plaintiff,         **MOTION DATE**      01/10/2025

                        - v -                          **MOTION SEQ. NO.**      003

569 BROAD LLC,                                       **DECISION + ORDER ON**
                                                           **MOTION**
                                    Defendant.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 003) 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68

were read on this motion to/for                   SUMMARY JUDGMENT                   .


Defendant's motion for summary judgment is granted for the reasons set forth below.

## Background

This breach of contract action arises out of a sale of a property in Newark, New Jersey. On June 21, 2021, Plaintiff, a real estate brokerage firm, and defendant, the owner of a building, entered into an exclusive sale listing agreement providing that plaintiff would be the sole agent for defendant in selling the property located at 569-577 Broad Street in Newark for 90 days. Plaintiff was to receive a 4% commission of the gross sales price of the property if it was sold "to a purchaser first introduced to the property during the term of the agreement" (NYSCEF Doc. No. 2 at 1). Plaintiff contends it supplied a purchaser for the property that culminated in a successful sale of the property for $4,240,000.00. On May 16, 2022, plaintiff sent defendant an invoice for the commission. Plaintiff alleges it did not receive payment and defendant did not object to the invoice.

[* 1]

Defendant contends that the only written agreement entered into between the parties expired 90 days after its execution and the plaintiff definitely did not introduce the eventual purchaser of the property to defendant during the ninety-day term. It argues that the agreement does not contain a renewal provision and instead requires any amendments or modifications to be set out in writing signed by all parties. Defendant admits it received a proposed amendment in October 2021 to extend the term of the agreement to January 21, 2022 but that defendant never signed this amendment.

Defendant argues that plaintiff's agent received an inquiry from the eventual buyer in November 2021, more than two months after the expiration of the term and that this was the first time that defendant heard about this prospective purchaser. It points out that plaintiff even testified that the first time defendant was told about this buyer was in November 2021. Defendant insists that at the time the buyer was introduced to defendant, there was no operative writing in place that authorized plaintiff to act on defendant's behalf. It concludes that, in any event, the statute of frauds bars plaintiff from recovering a commission as there was no writing upon which it can base its claims. Defendant maintains that the lack of a written agreement also compels the dismissal of the equitable causes of action.

In opposition, plaintiff contends that it continued to provide brokerage services long after the agreement's purported termination date and, therefore, the terms of the agreement were modified by the parties' actions. Plaintiff points out that it had a large sign hung on defendant's property as late as May 2022 that advertised its contact information. It insists that the eventual buyer reached out to plaintiff and then plaintiff connected that buyer to defendant.

Plaintiff points to emails in which defendant purportedly reached out to plaintiff about possible offers after the expiration of the agreement and stresses that defendant kept

communicating with plaintiff as if the agreement was still in effect. Plaintiff argues that the evidence shows that the parties continued to perform under the agreement well beyond the expiration of the agreement. It insists that, in any event, the parties' continued performance supports the quantum meruit/quasi contract claims.

In reply, defendant emphasizes that plaintiff, an experienced brokerage firm, was well aware that a written extension of the agreement was required in order to seek a commission. It argues that this is why plaintiff sent a renewal contract and observes that defendant never signed this agreement. Defendant stresses that the agreement had a "no oral modification" provision and that plaintiff did not even argue that this right was ever waived by defendant. It characterizes the post-termination communication between the parties as sporadic and argues that there was no discussion of the payment of a commission or renewal of the expired agreement.

**Discussion**

As an initial observation, both parties agree that New Jersey law applies here (as this is a transaction involving the sale of a property in Newark, New Jersey).

The Court's analysis begins with the deposition of plaintiff's agent, Mr. Caplan. He admitted, in connection with a discussion about the terms of the brokerage agreement that "the defendant want[ed] a shorter term for the brokerage agreement and not the automatic renewals" (NYSCEF Doc. No. 53 at 32). A prior proposed agreement sent by plaintiff to defendant included a term lasting 360 days to be renewed for 180 days in perpetuity until cancelled by one of the parties (*id*. at 30).

The ultimate agreement the parties signed stated that "This Agreement shall be for a term commencing on the Effective Date and terminating ninety (90) days thereafter" (NYSCEF Doc.

[* 3]

No. 15, ¶ 5). Mr. Caplan testified that the agreement did not contain any automatic renewal language (NYSCEF Doc. No. 53 at 38). The agreement also included a provision that "No amendments or alterations to the terms and provisions of this Agreement shall be valid or binding unless in writing and signed by both Owner and Broker" (*id*. ¶ 13[e]).

Mr. Caplan was also questioned about the October 2021 amendment he prepared in connection with the brokerage agreement (NYSCEF Doc. No. 53 at 62). When asked why he sent this draft agreement to defendant, he admitted that he "had enough activity there that I wanted to keep listing it. And to the best of my knowledge, there were no issues on their end. They didn't give me any reason not to continue marketing it. We had a lot of interest with developers. So I decided to renew the amendment and keep going" (*id*.at at 64). Mr. Caplan acknowledged that the "base term of 90 days . . . had expired" but insisted that the "there was no change in the relationship" (*id*.). He also recognized that under the brokerage agreement, defendant did not have to advise him that the agreement was terminated and insisted he was well aware that a broker needed a written listing agreement (*id*. at 53).

This deposition testimony and the documents submitted on this record compel the Court to grant defendant's motion. It is undisputed that the listing/brokerage agreement expired in September 2021. And Mr. Caplan testified that he forwarded an email from the eventual purchaser to defendant on November 16, 2021 (*id*. at 70). The record suggests that this was the first time that this prospective purchaser was mentioned to defendant.

Unfortunately for plaintiff, the contract's term had already expired by November 2021 under its clear and unambiguous provisions. The Court observes that the "tail period" (a provision permitting plaintiff to recover a commission if defendant entered into an agreement to sell the building within 120 days after the expiration of the agreement provided that plaintiff

introduce the purchaser during the term of the agreement) does not apply (*see* NYSCEF Doc. No. 15, ¶ 7[c]). There is no dispute that defendant was introduced to the purchaser *after* the agreement expired.

The Court declines to permit a potential modification based on the parties' communications. Under New Jersey law, the statute of frauds bars plaintiff's argument that the expiration date was modified by the parties' conduct. "Strict compliance with the statute of frauds is essential for a broker to recover a commission for the sale of real estate. The statutes of frauds are designed to protect the public from fraud, incompetence, misinterpretation, sharp or unconscionable practice. Our Supreme Court has long disapproved of business methods which rest on a broker's hopes that a commission will be voluntarily paid even though there is no legal obligation to do so" (*Coldwell Banker Commercial/Feist & Feist Realty Corp. v Blancke P.W. L.L.C.*, 368 NJ Super 382, 392, 846 A2d 633, 639 [NJ Super Ct App Div 2004]).

At the deposition of Mr. Caplan, it was clear that defendant expressly negotiated for an exclusive listing term that ended without an automatic renewal in contrast to the proposed provisions suggested by plaintiff, which contained automatic renewals until a party cancelled the contact. Moreover, Mr. Caplan (an experienced real estate professional) clearly knew that the term had expired because he sent a proposed renewal to defendant, an agreement which defendant never signed. And he sent this renewal proposal in October 2021 (NYSCEF Doc. No. 55), *before* he forwarded the email from the prospective buyer in November 2021. In sum, this shows that the agreement's term had ended and that plaintiff needed, under both the terms of the contract and New Jersey case law, a new *written* agreement signed by both parties. This compels the Court to grant summary judgment on the breach of contract and the account stated causes of action as there was no agreement upon which plaintiff could recover.

With respect to the quasi-contract theories, the Court also grants the motion. To be sure, plaintiff relies upon a New Jersey Supreme Court case that permitted a broker to recover in quasi-contract, *Weichert Co. Realtors v Ryan* (128 NJ 427, 432, 608 A2d 280, 282 [1992]). But, as a more recent Appellate Division decision observed:

> "In *Weichert*, our Court held a buyer liable to pay quantum meruit compensation to a broker, where the two did not form an enforceable agreement; but, the version of the statute of frauds at the time required a writing only when the seller was responsible for the commission, and did not bar oral agreements between a buyer and a broker. 128 N.J. at 441 (referencing N.J.S.A. 25:1-9, repealed by L. 1995, c. 360, § 9, eff. Jan. 5, 1996). Thus, an award of quantum meruit in that case did not violate the policy of the statute of frauds then in effect. However, the 1996 revision of the statute of frauds requires a signed writing when a broker seeks a commission from a "principal" as distinct from only a seller, expanding the reach of the statute to commissions sought from buyers, sellers, or owners. L. 1995, c. 360, § 7" (*DKNJ Real Estate and Appraisal, LLC v Reussi Capital Ltd. Liab. Co*., A-2316-19, 2021 WL 475076, at \*5 [NJ Super Ct App Div Feb. 10, 2021]).

As defendant persuasively argues, *Weichert* is therefore inapposite to the instant circumstances.  Plaintiff also points to the *Coldwell Banker* action cited above (*Coldwell Banker*, 368 NJ Super at 392) for the proposition that quasi contract theories of recovery are permitted for brokers.  But the broker in that case sought recovery on the ground that the brokerage had sent a written confirmation of an oral agreement as provided under New Jersey Law but had merely failed to serve it correctly (*id*.). This type of notice had to be served personally, or by registered or certified mail.

The New Jersey Court simply found that a quasi contract theory was viable because only a simple technical violation of the statute prohibited the broker's breach of contract claim (*id*. at 402). That is not the case here as plaintiff does not contend that it attempted to comply with this particular New Jersey statute. To the contrary, plaintiff had actual knowledge it needed to renew the agreement in writing and did not obtain defendant's acceptance. That lack of acceptance also suggests that these causes of action should be dismissed (*id*. [noting that an element of a

quantum meruit claim is that the services performed be accepted]). "Casting a claim for a broker's commission as a claim in quantum meruit is an attempt to evade the statute which [will] not be countenanced" (*DKNJ Real Estate and Appraisal, LLC*, 2021 WL 475076, at *6).

The Court also points out that Mr. Caplan's deposition testimony suggests that plaintiff did not actively negotiate in the sale sufficient to justify a quasi-contract theory of recovery. He testified that he forwarded the offer to defendant and then relayed a message back to the prospective buyer that the offer was too low (NYSCEF Doc. No. 53 at 71-72). But that was it—Mr. Caplan was unaware that the building was even sold until months later in January 2022 (*id*. at 73).  This is not a situation in which defendant used plaintiff to negotiate and finalize the sale on its behalf for months only to then insist that it need not pay at all for these services.

To the extent that plaintiff argues that plaintiff placed a sign on the building which remained until at least May 2022, that does not change the Court's decision. Mr. Caplan admitted at his deposition that plaintiff's practice is to leave a sign up until the owner requests it be removed, plaintiff itself terminates an agreement, or plaintiff decided to move it elsewhere (NYSCEF Doc. No. 53 at 53-54). Plaintiff cannot create a theory of recovery by leaving a sign on a property while knowing full well that an agreement has expired. The Court views this as a unilateral attempt to extend plaintiff's contract with defendant which, as noted above, is not a valid way to modify the subject brokerage agreement.

**Summary**

The material facts are undisputed.  The parties had a written contract which expired. Plaintiff knew it expired and tried to extend it but defendant declined.  Knowing there was no contract in place, plaintiff forwarded an inquiry from a potential buyer and let the buyer know

[* 7]

that the owner responded that the bid was too low. Eventually, plaintiff found out that that inquirer ended up buying the building.

The Court readily acknowledges plaintiff's position in this action. Plaintiff introduced the buyer and seller. But that isn't enough, under the statutes and case law, to get a commission. In New Jersey, a written agreement is necessary. And here, there was no agreement in place; plaintiff wanted to extend the agreement, the defendant declined, and then plaintiff introduced the parties anyway.

Obviously, it is easy, after the fact, to say that plaintiff should not have communicated the offer until defendant signed the agreement. The legal implications of sending on this offer and introducing the parties may not have been at the forefront of plaintiff's concerns. But the law is exceedingly clear that a writing is necessary in order for a broker to get a commission. Moreover, as mentioned above, plaintiff had a second chance to try to assert its right to a commission: the relevant New Jersey statute allows brokers to get a commission based on an oral agreement if they send a written notice stating the terms of the agreement including the amount of the commission (*see* NJ Stat Ann § 25:1-16 [d]). Plaintiff did not avail itself of the protections of that statute, either. This Court simply recognizes in this decision that there was a clear agreement signed by two sophisticated parties to sell a multi-million dollar building and that agreement had expired and had not been renewed.

Defendant also asked for legal fees; however, that request is denied at this time because defendant did not meet its prima facie burden for such fees. Defendant did not include any evidence (such as invoices) to demonstrate it had incurred legal fees or make a demand for a specific amount of fees.

Accordingly, it is hereby

[* 8]

[* 9]

ORDERED that defendant's motion for summary judgment is granted and the Clerk is directed to enter judgment accordingly along with costs and disbursements upon presentation of proper papers therefor. Case dismissed.

| 1/14/2025 | | | | |
|-----------|---|---|---|---|
| **DATE** | | | **ARLENE P. BLUTH, J.S.C.** | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|------------|---|---------------|---|----------------------|---|
| | | GRANTED | DENIED | X GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**652479/2022   DANIEL B. KATZ & ASSOCIATES CORP. vs. 569 BROAD LLC**
**Motion No.  003**

Page 9 of 9